UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE I. HARRINGTON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No.  2:13-cv-0052 AC<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court will grant in part plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB in September 2009, alleging disability beginning on April 24, 2009. Administrative Record ("AR") 122-25. Plaintiff's application was denied initially and again upon reconsideration. AR 78-82, 84-88. On May 11, 2011, a hearing was held before administrative law judge ("ALJ") Jean R. Kerins. AR 41-69. Plaintiff appeared with

attorney representation at the hearing, at which she and a vocational expert testified. See id. In a decision dated July 18, 2011, the ALJ found that plaintiff has not been under a disability within the meaning of the Act. AR 10-21. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since April 24, 2009, the alleged onset date.
>
> 3. The claimant has the following severe impairments: bilateral shoulder severe rotator cuff tendonitis, cervical spine sprain, bilateral shoulder impingement syndrome, status-post bilateral shoulder arthroscopic surgery, and adjustment disorder with depressive features.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally perform overhead reaching and frequently perform postural activities, handling, fingering, and feeling. Mentally, she has the ability to make judgments, understand, remember, carry out detailed work but not complex instructions and had no limitations in responding appropriately to usual work situations and interacting appropriately with supervisors, co-workers, and the public.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on May 21, 1970 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. The claimant has acquired work skills from past relevant work.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 24, 2009, through the date of this decision.

AR 10-21.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on November 16, 2012, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-6.

## FACTUAL BACKGROUND

Born on May 21, 1970, plaintiff was 38 years old on the alleged onset date of disability and 40 years old at the time of the administrative hearing.  Prior to the onset of disability, plaintiff worked for 14 years as a dental hygienist.  AR 45.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir.2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir.1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

1  (citations omitted). "Where the evidence is susceptible to more than one rational interpretation,
2  one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v.
3  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the Court may review only the reasons
4  stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not
5  rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d
6  871, 874 (9th Cir. 2003).

7  The court will not reverse the Commissioner's decision if it is based on harmless error,
8  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the
9  ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th
10 Cir.2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.
11 Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS

13 Plaintiff seeks summary judgment on the grounds that the ALJ: (1) failed to credit a
14 treating physician's opinion; (2) failed to mention, let alone consider, the opinion of her treating
15 psychiatrist; and (3) improperly discredited plaintiff's subjective testimony. The Commissioner,
16 in turn, argues that the ALJ's decision is supported by substantial evidence and is free from legal
17 error.

18 A.    Opinion of Treating Physician
19        1.    Dr. Nicholas Colyvas

20 On July 22, 2009, treating physician Dr. Nicholas Colyvas completed a Comprehensive
21 Orthopaedic Consultation Report for a Claims Adjuster regarding plaintiff's workers
22 compensation claim. AR 313-17. Dr. Colyvas noted that plaintiff's injury – specifically, her
23 neck and bilateral shoulder pain – became progressively worse due to the repetitive nature of her
24 work. He noted that plaintiff was initially treated with physical therapy, which exacerbated her
25 condition. She was then treated by a chiropractor and prescribed medication. Plaintiff did see
26 some improvement with the prescription medication and an occasional Advil. A physical
27 examination of plaintiff revealed full range of motion in neck, though with reports of pain;
28 limited range of motion in left shoulder due to pain; and full range of motion in the right shoulder.

Examination of an x-ray of the left shoulder clearly showed calcific tendinitis, and an MRI of the cervical spine revealed a mild disc bulge at C5/6 but was otherwise negative. Dr. Colyvas opined that plaintiff was suffering from a repetitive stress injury manifesting as left shoulder severe rotator cuff teninosis and partial tear; cervical spine sprain with C5/6 left radicular pain; and right should rotator cuff tendinosis, possible cuff tear. Dr. Colyvas recommended conservative treatment at the time, including continued physical therapy and continued use of non-steroidal anti-inflammatory medications.

Following several appointments concerning plaintiff's bilateral shoulder pain and neck pain between August and December 2009, see AR 307-12, Dr. Colyvas eventually performed surgery on plaintiff's right shoulder on May 20, 2010, id. 418-19, and on plaintiff's left shoulder on September 17, 2010. See AR 492.

On March 3, 2011, Dr. Colyvas completed a Physical Residual Functional Capacity Questionnaire. AR 492-95. He diagnosed plaintiff with a repetitive stress injury, noting it to be stable though unlikely to improve. Her symptoms included pain and weakness of the upper extremities and upper back. Dr. Colyvas indicated that plaintiff's impairments can be expected to last at least twelve months and that plaintiff is not a malingerer. In light of plaintiff's impairments, he noted that plaintiff's typical workday would be interrupted frequently. Dr. Colyvas opined that, in an 8-hour workday, plaintiff could sit/stand/walk and stand/walk for less than two hours at a time, but could sit for about two hours at a time. He further opined that plaintiff would need to take an unscheduled 15-minute break every 1-2 hours. He limited plaintiff to frequently lifting and carrying less than 10 pounds, occasionally lifting 10 pounds, and never lifting more than 20 pounds. He also limited plaintiff to occasionally looking up or down, turning head, and holding her head in a static position, twisting, stooping, crouching, squatting, climbing ladders and stairs. Lastly, he determined that, in an 8-hour workday, plaintiff could only grasp, turn or twist objects 20% of the time, could perform fine manipulations 10% of the time, and could reach overhead only 5% of the time.

2. Analysis

The ALJ gave only minimal weight to Dr. Colyvas's physical questionnaire because it

was not consistent with the overall objective evidence or with the State Agency physical determinations at the reconsideration level.[1]  AR 19.  Plaintiff contends this was in error.

The opinions of treating physicians are generally given greater weight than those of other physicians because of the treating physicians' intimate knowledge of the claimant's condition. Aukland v. Massanari, 257 F.3d 1033, 1037 (9th Cir. 2001).  In order to reject the opinion of a treating physician, the ALJ is required to show specific and legitimate reasons based on substantial evidence from the record.  Id.; see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Substantial evidence may be based in part on the testimony of a non-treating, non-examining medical advisor.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602-03 (9th Cir. 1999).  However, substantial evidence may not be based on a reviewing physician's opinion alone, or on the reviewing physician's opinion and the ALJ's personal observations.  Id.  Rather, substantial evidence requires additional evidence, such as inconsistencies between the treating physicians' reports and the testimony of the claimant.  Id.  Additionally, an ALJ may properly discount a treating physician's opinion where the treating physician relies heavily on the subjective complaints of the claimant.  See id.

Where, as here, the ALJ relied on the opinion of a State Agency consultant, the applicable legal standard is:

> Where . . . a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record.

Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  In this case, the State Agency medical consultants were asked to review plaintiff's medical file to determine the severity of plaintiff's

---

[1] On January 12, 2010, a State Agency medical consultant who reviewed plaintiff's medical records regarding her bilateral shoulder pain completed a Physical Residual Functional Capacity Assessment.  AR 322-26.  This consultant determined that plaintiff is capable of medium level work with occasional overhead reaching.  On August 17, 2010, a second State Agency medical consultant completed a Physical Residual Functional Capacity Assessment, determining that plaintiff could perform light work with limited overhead reaching.  AR 447-51.  This second consultant's opinion is the reconsideration referred to by the ALJ.

impairments. These experts did not examine plaintiff nor did they undertake any independent testing prior to rendering their opinions; they simply reviewed the medical evidence in the file. In fact, even if the court assumes that the state experts had all of the medical evidence that plaintiff's treating doctors had, which is in fact unclear from the record, the Ninth Circuit requires that the ALJ provide specific legitimate reasons for rejecting the opinions of plaintiff's treating physician and giving weight to the non-examining opinions of the agency experts. The ALJ did not do so here.

The ALJ also gave minimal weight to Dr. Colyvas's opinion because it was not consistent with the overall objective evidence. However, the ALJ did not cite to the record or offer any analysis of the medical evidence in support of this position. The ALJ's previous summary of portions of the medical record is insufficient to satisfy the Commissioner's burden of setting forth specific and legitimate reasons for rejecting the opinion of a treating physician. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct."). The Commissioner attempts to remedy this problem by citing to medical evidence in support the ALJ's decision, but this court must "review the ALJ's decision based on the reasoning and actual findings offered by the ALJ." See Bray v. Comm'r of Soc. Sec., 554 F.3d 1219, 1226-27 (9th Cir. 2009) (internal citation omitted). Accordingly, the court finds that the ALJ erred in failing to give specific and legitimate reasons for giving minimal weight to the opinion of treating physician, Dr. Colyvas.

B.       Opinion of Treating Psychiatrist

     1.       Dr. Michael McAndrews

From February 28, 2011 through March 30, 2011, plaintiff was evaluated by psychiatrist Dr. Michael McAndrews. AR 496-504. At the time of these evaluations, plaintiff had been off of work for two years, was experiencing financial problems because her workers compensation

payments stopped, was experiencing pain at all hours, and felt sad and increasingly worried. Dr. McAndrews observed plaintiff to be "angry, irritable, labile, tearful, DEPRESSED." He noted that her facial expression and general demeanor reveal depressed mood, as do her speech and thinking. Dr. McAndrews's primary diagnosis was Major Depressive Disorder, Recurrent, Severe w/o Psychotic Features. He discussed spiritual support for plaintiff, recommended psychotherapy to stress coping skills, and prescribed Zoloft for depression and anxiety. He also assigned a GAF score of 45.[2]

  2.   Analysis

The ALJ did not mention Dr. McAndrews or his diagnosis. Rather than referring to Dr. McAndrews's diagnosis of Major Depressive Disorder, Recurrent, Severe w/o Psychotic Features, the ALJ referred to a June 8, 2010 consultative examination performed by Dr. Jack Latow, which revealed mild depression and a GAF of 70-75, AR 400-03; a July 31, 2010 Psychiatric Review Technique prepared by a State Agency consultative psychiatrist, who affirmed Dr. Latow's diagnostic impression, see AR 433; and an undated letter prepared by Annette Kelso, MFT Intern at Olive Branch Counseling Group, who noted that plaintiff had been in therapy since September 2009, presented with major depression, as evidenced by depressed mood most of the day, hypersomnia with loss of energy, feelings of worthlessness, and diminished ability to concentrate, AR 508.

The Commissioner argues that the ALJ was not required to discuss Dr. McAndrews's records because they do not qualify as a "medical opinion." Per the Commissioner, a "medical opinion" is a term of art for a statement that contains the following detailed information: (1) the nature and severity of plaintiff's impairments for the period in question; (2) whether the 12-month duration requirement is met; and (3) the plaintiff's residual ability to do specific work related

---

[2] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. A GAF score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work). See DSM-IV at 34.

1  mental and physical activities.  This argument lacks merit.  Although the ALJ was entitled to
2  identify limitations in Dr. McAndrews's treatment notes and diagnosis as factors in rejecting
3  them, the ALJ was not relieved of her duty to consider the notes and diagnosis in the first
4  instance.  The Commissioner also argues that plaintiff's treatment by Dr. McAndrews's was her
5  first referral to a psychiatrist, suggesting that she was functioning adequately prior to the referral.
6  But again, the Commissioner's post hoc rationalizations are improper.  The undersigned therefore
7  finds that the ALJ committed reversible error in failing to discuss Dr. McAndrews's treatment
8  notes and diagnosis.

C. <u>The ALJ's Credibility Determination</u>

Lastly, plaintiff argues that the ALJ erred in finding her subjective complaints not entirely credible.  Because the court finds that this matter should be remanded for the aforementioned reasons, the court declines to consider this argument.

D. <u>Remand</u>

Plaintiff asserts that this matter should be remanded for immediate payment of benefits rather than further proceedings.  A remand for further proceedings is unnecessary if the record is fully developed, and it is clear from the record that the ALJ would be required to award benefits. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001).  The decision whether to remand for further proceedings turns upon the likely utility of such proceedings.  <u>Barman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000).  In this matter, this court concludes that outstanding issues remain that must be resolved before a determination of disability can be made.  Pursuant to this remand, the ALJ shall properly consider Dr. Colyvas and Dr. McAndrews's opinions.

CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is granted in part;
2. The Commissioner's cross-motion for summary judgment is denied; and

////
////
////

3. This matter is remanded for further proceedings consistent with this order.

DATED: February 4, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE